THOMAS, Justice.
The appellee, S. J. Halperin, a real estate broker, was granted a summary judgment against Samuel Bratter, a prospective lessee, Seymour Siegel, sometime salesman in Halperin’s office, and Betty Fitzpatrick, an owner and lessor, and this appeal followed.
The appellee set out in his complaint that one N, B. T. Roney, acting for his daughter, the appellant Betty Roney Fitzpatrick, listed with appellee, a qualified real estate agent and broker, certain property which it was 'the desire of the owner to lease for ninety-nine years. To continue, the appel-lee averred that he introduced Roney to the appellant Bratter, and that a long series of negotiations ensued culminating in an agreement to lease at specified rental. This statement was hardly accurate as is demonstrated by averments immediately following. The matter was referred by the owner to an attorney for preparation of a written lease, whereupon Bratter attempted to have included a provision relieving him of rental payments for any period that construction of a building on the premises “should be delayed by reason of any governmental restrictions or bans * *
At this point we interrupt the analysis of the complaint to remark upon the inconsistency between the allegation of the pleading about there being a “complete meeting of minds * * * ” at the time the time services of an attorney were sought, and no “immediate meeting of the minds on [the] particular point” of suspension of rentals during interference by the government. Obviously the lease would be binding only when written and executed to end the suspended, so to speak, meeting of the minds, so these references are of no. moment whatever, as will be even more apparent when we digest the affidavits supporting the motion for summary judgment. It is important to note that we have related what occurred in the fall of nineteen-fifty. Just here the pleader leaves the matter of this lease and pleads that the ’appellee persevered in his efforts “to contact the owner’s representative and the prospective lessee * *
The next sentence of the pleading is a charge that the following spring appellant Betty Roney Fitzpatrick entered a lease agreement with Bratter “upon the same *413 terms originally agreed upon, except that the rent for the first one year period was reduced [from $45,000] to $25,000.”
At all times, it was represented, appellant Siegel was employed as a salesman by ap-pellee, and he, without the knowledge of appellee, agreed with Bratter and Roney so to reduce the rent, and then colluded to defeat the collection by appellee of a commission. This supposed collusion brought about a lease from Betty Roney Fitzpatrick to 300 Lincoln Road, Inc., a corporation.
We should here point out that the lease has been alleged to have been made both to Bratter and the corporation.
Plaintiff insists that the lease was the fruit of his labor.
In the next count it was charged that Bratter and Siegel formed the corporation to conceal the identity of the lessee, and that the reduction of rental resulted from a payment of a decreased commission to someone whose name is not given.
To summarize the allegations — they mean to us that appellee introduced the agent of the owner to the prospective lessor, but no lease was executed, and that several months later a lease of different terms was given to a corporation formed by the original prospective lessee and appellee’s salesman which the appellee charges amounted to a subterfuge engineered by these two men and that they, with the lessor, conspired to defeat the collection of his commission.
A few days after the complaint was filed Bratter and Siegel moved to dismiss it, but no ruling was made by the court until the summary judgment was entered. Meanwhile motions for summary judgment had been filed by all parties litigant and affidavits had been presented in accordance with the rule.
It is from these affidavits that we must reconstruct the transaction upon which the judgment for appellee was based.
First, Halperin deposed that Siegel was a licensed real estate broker on the inactive list, but serving as a salesman, for Hal-perin. Siegel could sell property of his own without any responsibility for payment of a commission, but the commissions on property of others sold by him were to be paid Halperin, who in ■ turn would pay Siegel'seventy per cent. In October, 1950, Halperin tried to interest Bratter in leas-' ing the property owned by Betty Roney Fitzpatrick and introduced Bratter to Ro-ney, her agent. Following a conference among Bratter, Halperin, Mrs. Fitzpatrick’s attorney, and Roney, a proposed lease was drawn. Bratter wished the insertion of the condition already described and Roney would not agree, so the lease agreement was not executed. This situation was established by the affidavit of Roney as well.
Halperin further swore that Bratter repeatedly asked him to renew the negotiations with Roney and he often attempted to bring about a compromise of their differences; that lk.s efforts continued until the following May when he learned that Roney had leased the property to 300 Lincoln Road, Inc., which was, in reality, Brat-ter and Siegel.
According to Roney, Siegel had approached him in April, 1951, with a proposal to lease the property to one Benn Bloom. Another conference was held, this time among Siegel, Roney, and the attorneys representing Roney and Bloom. The instrument which had first been prepared for execution by Bratter and Betty Roney Fitzpatrick was produced and used as a form for a lease eventually executed to the corporation, but it was used only as a form because many changes were made in the terms before execution and delivery to the corporation. Roney swore that Bratter’s name was never mentioned in the second series of conferences; that none of the parties connected with the first deal was involved in the second. The circumstances surrounding the drafting of the first proposed lease, the second lease, and the absence of any reference to Bratter were confirmed by the attorney who was familiar with both conferences, while the attorney who represented Bloom at the second conference stated that he, the attorney, knew of no broker in the deal except Siegel and that he represented no one except Bloom.
We now turn to the affidavits of Bratter, Siegel, and Bloom. The first contained the statement that the first deal failed, and that he, Bratter, discontinued his efforts to se *414 cure the leasehold. Then in the spring of 1951, Siegel told him that he was negotiating with Roney for a lease to Bloom who proposed to take the lease in the name of the Corporation he, Bloom, owned and controlled ; also that Halperin had no dealings whatever with Bratter relative to the second transaction. The second, Siegel’s, bore the declaration that although Siegel was a broker, he was “at all times material hereto a salesman in the office of the plaintiff [Halperin] * * Bloom didn’t really wish all of the property, but only a sufficient amount for a store site, so Siegel suggested to Bratter that the two secure a lease for all property and that a sublease for a portion of it be given to Bloom. Eventually, Roney, as agent, leased the property to the corporation, and thereupon Bratter and Siegel acquired Bloom’s stock, and the corporation executed the sublease to Bloom, a part consideration for which was the assignment of the stock. The third, Bloom’s contained a statement that seems to settle the question of Siegel’s interest at the time of the lease from Roney because deponent said “this agreement [that Bratter and Siegel would take over the lease] was arranged soon after my closing * * Italics ours. He then assigned his interest in the corporations and got the lease to part of the property.
After wending our way through the pleadings and the proof we have come to the conclusion that Bratter was not responsible for a commission to anyone. By Siegel’s own testimony he was in the employ of the appellee at all relevant times. According to his arrangement with Hal-perin, if we accept the employer’s version, he was to get no direct commissions but was to be paid by his employer a percentage of commissions he earned for his employer. If we believe Siegel he was to pay Halperin .30% of commissions he earned except from transactions “in which [he] had a proprietary interest.” In either event the division is not in doubt.
The exception to this rule regulating distribution of money produced by the relationship was the elimination of all liability for fees where the agent sold his own property. But this exception provided no refuge for Siegel in the circumstances we have related for at the time the property was conveyed to the corporation he had no “proprietary interest” in it, and the fact that he later became a stockholder and was so interested at the time of the lease to Bloom would avail him nothing because the fee in dispute arose from the second lease, not the sublease.
There is overwhelming evidence that the first effort to secure a lease from Betty Roney Fitzpatrick failed entirely and that the eventual lease to the corporation was wholly disconnected from the first negotiations.
We are convinced that Siegel could not circumvent his employer, but we cannot adopt the view that Bratter and Betty Ro-ney Fitzpatrick have been proved to have conspired with each other and with Siegel to damage the appellee. That conclusion depends too much on the fact of the exchange of the sublease for the corporate stock, which raises in our minds little more than a suspicion that the second lease was a scheme to defeat Halperin’s claim. Perhaps Siegel had such a motive, but it is not established that Bratter and Betty Roney Fitzpatrick participated or that they had a motive for doing so.
Our view is that any commission paid, or to be paid, for services that brought about the eventual lease to the corporation were divisible 30% to appellee and 70% to Siegel and that appropriate judgments should be entered against Siegel for 'any amount he has collected for Halperin and against Betty Roney Fitzpatrick for any amount she owes on the commission.
As to Bratter we think the judgment should be reversed.
Inasmuch as all parties asked for a summary judgment we have not been impressed by appellants’ challenge of the procedure followed.
Affirmed in part and reversed in part.
SEBRING, C. J., and MATHEWS and DREW, JJ., concur.